IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANTHONY MILES,
    *Petitioner*,

v.

UNITED STATES OF AMERICA,
    *Respondent*.

Crim. No. ELH-13-0512
Related Civil No. ELH-16-2479

**MEMORANDUM OPINION**

Since November 2015, Anthony Miles, the self-represented Petitioner, has submitted numerous filings stemming from his conviction on a charge of conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. § 846. This Memorandum Opinion resolves Petitioner's Motion to Vacate, Set Aside or Correct Sentence (ECF 568), as amended (ECF 584) (collectively, the "Petition").[1]

The government opposes the Petition. *See* ECF 585. Miles replied by way of a "Motion." ECF 586. In addition, he filed a "Motion For Production Of District Court Record In Crim. No. ELH-13-0512" (ECF 589), and a "Motion For Expansion Of The Record" (ECF 599).

---

[1] Mr. Miles submitted his first post-conviction submission on November 30, 2015. *See* ECF 541. In that submission, he inquired as to whether he is entitled to relief under *United States v. Johnson*, ___ U.S. ___, 135 S. Ct. 2551 (2015). He subsequently moved in ECF 564 to withdraw ECF 541. To avoid any contention that Mr. Miles's Petition under 28 U.S.C. § 2255 is untimely, I shall deny ECF 564, and shall consider ECF 568 and ECF 584 as supplements.

The complicated procedural posture of the case was addressed by the Court in the following memoranda or correspondence: letter of March 2, 2016 (ECF 553); Memorandum of April 5, 2016 (ECF 557); Memorandum of May 5, 2016 (ECF 562); Order of July 29, 2016 (ECF 572); letter of September 1, 2016 (ECF 577); letter of September 30, 2016 (ECF 579); letter of October 5, 2016 (ECF 582); letter of September 11, 2017 (ECF 590); and letter of December 1, 2017 (ECF 594).

Under 28 U.S.C. § 2255(b), a hearing is required "[u]nless the motion and the files and records of the case conclusively show the prisoner is entitled to no relief . . . ." This is such a case. No hearing is necessary. For the reasons that follow, I shall grant ECF 599, but I will deny ECF 589. And, I shall deny the Petition (ECF 568, ECF 584).

## I. Procedural Background

On September 24, 2013, Miles and thirteen others were indicted on various drug related charges. *See* ECF 1. Miles was charged in Count One with conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. § 846. He was also charged in Count Nine with distribution of heroin on or about August 4, 2013, in violation of 21 U.S.C. § 841(a)(1). *Id.* at 11.

About a year later, on September 30, 2014, Miles entered a plea of guilty to Count One (ECF 351), pursuant to a Plea Agreement. ECF 352. Under the terms of the Plea Agreement, the offense to which Miles entered a guilty plea carried a maximum term of life imprisonment and a mandatory minimum term of ten years' imprisonment. *Id.* ¶ 3; *see* 21 U.S.C. § 841(b)(1)(A).

The plea was entered pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. ECF 352, ¶ 9. Under the C plea, the parties agreed to a sentence of 120 months. *Id.* ¶ 10. That proposed sentence corresponded to the congressionally mandated minimum sentence.

Paragraph 6 of the Plea Agreement set forth the parties' stipulations as to the sentencing guidelines. In ¶ 6(a), the parties agreed that Miles had a base offense level of 32 under § 2D1.1(4) of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") , which was based on the quantity of at least one kilogram of heroin but less than three kilograms of heroin. However, in ¶ 6(d) of the Plea Agreement, the parties anticipated the then impending changes to

the Drug Quantity Table, which went into effect in November 2014. Therefore, it was agreed that at sentencing the defendant would seek a two-level downward reduction based on the changes to the Guidelines. The parties further agreed that, if the Court granted that variance, defendant would not seek a sentencing reduction at a later time, under 18 U.S.C. § 3582(c)(2), based on the retroactive application of the amendment to the Guidelines. *Id.* at 4.

At the guilty plea proceeding on September 30, 2014, Miles was sworn. *See* ECF 504 (Transcript) at 2. In response to questions from the Court, Miles indicated that he was fully satisfied with the legal representation provided by his attorney. *Id.* at 5. Moreover, the Court confirmed with Miles that he had entered a plea of guilty to Count One of the Indictment, which charged him with conspiracy to distribute and possession with intent to distribute one kilogram or more of heroin. *Id.* at 7. Miles signified that he understood the offense to which he had entered a plea of guilty. *Id.*

Moreover, the Court reviewed the elements of the offense at issue (ECF 504 at 7-8), as set forth in the Plea Agreement. *See* ECF 352, ¶ 2. Paragraph 2(a) specified that the elements included the drug quantity of one kilogram or more of heroin. Miles indicated that he understood. ECF 504, at 8. Miles was also advised of the maximum possible penalty of life imprisonment and the mandatory minimum sentence of 10 years' incarceration. *Id.* at 8; *see* ECF 352, ¶ 3.

In addition, the Court reviewed the particulars of ¶ 6(a) of the Plea Agreement, indicating that the offense involved "at least one kilogram, but less than three kilograms" of heroin. *Id.* In response to whether that quantity was "consistent" with what Miles had been told (*id.*), Miles responded in the affirmative. *Id.* at 12. After applicable deductions, the parties anticipated a final offense level of 27. *Id.* at 14.

3

Of import here, ¶ 6(c) of the Plea Agreement (ECF 352) stated that Miles was "free to argue" as to any "offense characteristics, sentencing guideline factors, departures and/or adjustments, including as to [his] role in the offense . . . ." The Court reviewed that text. ECF 504 at 13. Miles was also advised that there was no agreement as to his criminal history and that he could be "deemed to be a career offender." *Id.* at 14; ECF 352, ¶ 7. Miles indicated that he understood. *Id.*

In addition, the Court reviewed with Miles the terms of the plea pursuant to Fed. R. Crim. P. 11(c)(1)(C). Pursuant to the terms of the C plea, the parties agreed to a sentence of 120 months' imprisonment, and Miles indicated that this was consistent with his understanding. ECF 504 at 15.

Further, Miles was informed that in ¶ 11 of the Plea Agreement, he waived most of his appellate rights. However, he reserved the right to appeal a sentence in excess of 120 months. *See* ECF 352, ¶ 11(b)(i). Miles indicted that he understood. ECF 504 at 16-17.

The Plea Agreement contained a written Statement of Facts (ECF 352 at 9-13), to which Miles stipulated. *Id.* at 13. Miles was advised that he had "agreed or stipulated to the Statement of Facts set forth in Attachment A" of the Plea Agreement. ECF 504 at 11. The Court added: "In other words, you've agreed that if this case went to trial at a minimum the government would prove [the facts in Attachment A] beyond a reasonable doubt." *Id.* Notably, the written Statement of Facts specifically stated that the amount of heroin reasonably foreseeable to Miles "was at least one kilogram . . . ." ECF 352 at 12. Then, the Court inquired if Mr. Miles understood he had made "that agreement?" ECF 504 at 11. Miles responded in the affirmative. *Id.*

4

The government also orally presented a summary of facts in support of the guilty plea. ECF 504 at 28-32. Among other things, the prosecutor stated that, if the case proceeded to trial, the parties stipulated that the government would prove, beyond a reasonable doubt, that the amount of heroin reasonably foreseeable to Miles was at least one kilogram of heroin. ECF 504 at 32. The Court specifically asked Miles if the government's factual summary was accurate. *Id.* He responded, "Yes, ma'am." *Id.*

On February 11, 2015, prior to sentencing, the Court ordered an attorney inquiry hearing, based on complaints from Miles. ECF 450. The magistrate judge held a hearing on February 18, 2015 (ECF 462) and determined that it was not necessary to appoint new counsel for Miles. ECF 505 at 2. *See also* ECF 447; ECF 463.

The Presentence Report ("PSR") was docketed on December 4, 2014. ECF 391. The Amended PSR is at ECF 491. The PSR reflected a base offense level that took into account the changes to the drug quantity table that went into effect in November 2014. Thus, the offense would have had a base level of 30, rather than 32. However, according to the PSR, Miles qualified as a career offender. ECF 391, ¶ 42; *see also id.* ¶¶ 31, 33. Therefore, his base offense level jumped from 30 to 37. After three deductions for acceptance of responsibility, Miles's final offense level was a 34. *See id.* ¶¶ 23, 24. If Miles were not a career offender, his final offense level would have been a 27. And, because of the career offender status, Miles's criminal history category increased from IV to VI.[2]

Sentencing was held on March 20, 2015. ECF 486. At sentencing, Miles maintained that, pursuant to the terms of his Plea Agreement, he had the right to challenge the drug quantity

---

[2] The Statement of Reasons (ECF 490) erroneously specifies a criminal history category of IV, rather than VI. It is clearly a typographical error. Indeed, ECF 490 sets out the Guidelines range that corresponds to an offense level of 34 and a criminal history category of VI.

5

attributable to him as well as his criminal history. ECF 505 (Transcript) at 3-5; *see* ECF 532, ¶ 6(c). The Court noted, *inter alia*, that the Plea Agreement involved a plea to Count One of the Indictment, and that count expressly charged conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin. *Id.* at 5-6. Moreover, in the Statement of Facts, to which the defendant agreed, he stipulated that the amount of heroin foreseeable to him was at least one kilogram. *Id.* at 6.

Ultimately, the Court determined that ¶ 6(c) of the Plea Agreement did not authorize a challenge to the drug quantity of one kilogram of heroin because, among other things, Miles had agreed to that drug quantity, under oath. *See*, *e.g.*, ECF 505 at 16, 19-21. The Court observed that, applying commonsense to the construction of the Plea Agreement, and in reconciling the various provisions, the defendant was not on sound legal ground in attempting to "undercut his plea by challenging the drug quantity when the entire plea was predicated on a plea to Count One, which charged conspiracy to distribute and possess with intent to distribute one kilogram or more." *Id.* at 20. In this regard, the Court identified the various places in the Plea Agreement that referenced the one kilogram. *Id.* at 20-21.

However, the Court expressly indicated to defendant, as follows, *id.* at 6: "Now, if you wish to withdraw your guilty plea and you want [defense counsel] to file a motion on your behalf, I will entertain that motion. I can't say now how I will rule in advance. But is that what you would like to do?" *See also id.* at 9, 21. Defendant stated: "I'm not trying to withdraw the plea, Your Honor. I'm just trying to get what was promised to me within this contract." *Id.* at 6. The Court also noted that the agreed upon term of 10 years' incarceration was linked to the drug quantity. *Id.* at 7. The Court reiterated, *id.* at 11-12: "I will entertain a motion to withdraw your guilty plea." And, the Court repeated itself, stating, *id.* at 13: "Again, if you wish to withdraw

6

your guilty plea, I am happy to entertain that request. . . . I'll keep an open mind, and we'll go from there." *Id.* Further, the Court said, *id.* at 22-23: "So if you're unhappy with your decision to have pled to the offense, which was a one kilogram or more quantity, the only thing I can contemplate is a motion to withdraw your guilty plea. And that is your decision."

Significantly, based on what transpired, the Court declined to go forward with sentencing on that date. *Id.* at 26. I stated, in part: "I wouldn't want [Miles] to feel somebody pressured him today to proceed to a sentencing after we have spent all this time ironing out what I think the agreement permits and what it doesn't permit." *Id.*

Notably, Miles was granted about a month to file a motion to withdraw his plea. *Id.* at 34. *See also* ECF 464 (paperless order of February 18, 2015, allowing Miles to file a motion to withdraw his guilty plea by March 13, 2015). However, no motion to withdraw the guilty plea was filed. Therefore, on March 20, 2015, the Court again proceeded to sentencing. ECF 486.

At the second sentencing proceeding, the Court reviewed all that had previously transpired. Mr. Miles reiterated, ECF 506 at 14: "I never had the opportunity for foreseeable drug amount in conspiracy. The government has used an alleged drug amount that was involved in the whole entire conspiracy. So basically, they're saying that I'm responsible for all the drugs that was in the conspiracy . . . ."

In response, the Court again asked Miles, *id.* at 18: "Do you wish to file a motion to withdraw your guilty plea?" Miles responded, *id.*: "No, Ma'am."

At sentencing, the Court determined that Mr. Miles qualified as a career offender within the meaning of U.S.S.G. § 4B1.1, on the basis of a prior Maryland felony conviction for the offense of possession of CDS with the intent to distribute (ECF 391, ¶¶ 31-32), and for the prior

7

federal offense of possession of a firearm in furtherance of a drug trafficking crime. *Id.*, ¶¶ 33-38.[3]  *See* ECF 506 at 22, 23.

Based on a final offense level of 34 and a criminal history category of VI, the Court determined that the advisory sentencing guideline range called for a period of incarceration ranging between 262 and 327 months. ECF 506 at 24. After hearing argument from counsel for both sides, the Court agreed to abide by the C plea and imposed a sentence of 120 months' incarceration. *Id.* at 30-36.  *See* ECF 489 (Judgment); ECF 490 (Statement of Reasons). As indicated, that sentence corresponded to the congressionally mandated minimum sentence. And, the sentence was well below the bottom of the Guidelines range.

Within a few days, Miles noted his appeal to the Fourth Circuit. ECF 488. The government moved to dismiss the appeal, based on Miles's waiver of the right to appeal, as set out in the Plea Agreement. The Fourth Circuit granted the motion and dismissed the appeal. *See* ECF 533; ECF 534. The mandate issued on September 11, 2015. ECF 536.

The Fourth Circuit stated, in part, ECF 533 at 1-2: "Upon review of the record, we conclude that the issue Miles seeks to raise on appeal, that the District Court erred in finding he could not challenge the drug quantity attributed to him, falls squarely within the compass of his waiver of appellate right." Miles did not file a petition seeking certiorari with the United States Supreme Court. ECF 584 at 3, ¶ 10.

Additional facts are included in the Discussion.

---

[3] Miles's conviction for possession of a firearm in furtherance of a drug trafficking crime occurred in case RDB-04-0168. On May 17, 2005, Miles entered a plea of guilty in that case and Judge Bennett sentenced him on June 1, 2005, to a term of 96 months imprisonment. The defendant was released on March 2, 2012. Miles's conviction in the case at hand resulted in a violation of the terms of his supervised release in Case 04-0168-RDB. For the violation of supervised release, Judge Bennett imposed a term of 30 months, to run concurrent with the term imposed in ELH-13-0512. *See* RDB-04-0168, ECF 98.

## II. The Contentions

In his Petition, Miles asserts several contentions. In "GROUND ONE," he argues that he was unlawfully found to be a career offender. ECF 584 at 4-5. In "GROUND TWO," he argues that his Fifth and Sixth Amendment rights were violated because he was entitled, under paragraph 6(c) of the Plea Agreement, to challenge the drug quantity attributable to him. *Id.* at 5. In support of this contention, Miles argues, *inter alia*, that he did not understand the significance of the terms "stipulate" and "disposition"; his lawyer never explained the terminology to him; and, during his Rule 11 plea colloquy, the Court led him to believe he could challenge drug quantities. *Id.* at 6-7.

In "GROUND THREE," Miles argues that his guilty plea "is not the product of a free will where the government made it impossible for Petitioner to make a rationale, informed choice in violation of the Constitution's Due Process Clauses; Effective and Meaningful Court—Access; and Effective Assistance of Counsel Guarantees." *Id.* at 9. In this portion of the Petition, Miles complains, *inter alia*, about the use of a "cell-site simulator" to search his cellular telephone; defense counsel's failure to investigate the facts and the law; and defense counsel's failure to explain that the drug quantity "triggered a statutory mandatory minimum sentence of 120 months." *Id.* at 9-10.

The Court is mindful that a self-represented litigant is generally "held to a 'less stringent standard[ ]' than is a lawyer, and the Court must liberally construe his claims, no matter how 'inartfully' pled." *Morrison v. United States*, Crim. No. RDB-10-0507; 2014 WL 979201, at *2 (D. Md. Mar. 12, 2014) (internal citations omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *Bala v.*

9

*Commonwealth of Virginia Dep't of Conservation & Recreation*, 532 Fed. App'x. 332, 334 (4th Cir. 2013) (same).

### III. Discussion

Section 2255(a) of Title 28 of the United States Code provides relief to a prisoner in federal custody only on specific grounds: that the sentence was imposed in violation of the Constitution or laws of the United States; that the court was without jurisdiction to impose such a sentence; that the sentence was in excess of the maximum authorized by law; or that the sentence is otherwise subject to collateral attack.

### A. Career Offender Status

Miles argues that his prior federal conviction for possession of a firearm in furtherance of a drug trafficking crime does not constitute a crime of violence under *Johnson v. United States*, ___ U.S. ___, 135 S. Ct. 2551 (2015). Therefore, he complains that he should not have been deemed a career offender.

The career offender finding was entirely academic, as Miles was sentenced pursuant to the C plea. In addition, Miles was not prejudiced by the finding of career offender status, because the Court imposed the congressionally mandated minimum sentence. In any event, Miles was correctly found to be a career offender.

To qualify as a career offender, the offense of conviction must be either a felony crime of violence or a felony controlled substance offense; the defendant must have been at least eighteen years of age when he committed the offense; *and* the defendant must have "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a).

Section 4B1.2(b) of the Guidelines defines "controlled substance offense." It states:

> The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

Certainly, the defendant was over the age of 18 at the relevant time and the offense at hand was a felony drug offense. Moreover, Miles had at least two prior qualifying felony convictions.

The Amended Presentence Report (ECF 491) reflects that in February 2005 Miles was convicted in Maryland of a felony drug offense –possession with intent to distribute marijuana. *Id.* ¶ 31. He was sentenced to four years of incarceration, of which two years were suspended. *Id.* The PSR also reflects in ¶ 33 that Miles was convicted on March 2, 2005, before United States District Judge Richard Bennett, of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). He was sentenced to 96 months' incarceration and was released in March 2012. At the time of the underlying offense, Miles was on supervised release for the federal offense.

The commentary to U.S.S.G. § 4B1.2 explains: "A violation of 18 U.S.C. § 924(c) . . . is a 'crime of violence' or a 'controlled substance offense' if the offense of conviction established that the underlying offense was a 'crime of violence' or a controlled substance offense.'" U.S.S.G. § 4B1.2, comment n.1. The judgment in RDB-04-0168, ECF 35, of which the Court may take judicial notice,[4] involved narcotics.

---

[4] A court "may properly take judicial notice of 'matters of public record' and other information that, under Fed. R. Evid. 201, constitute 'adjudicative facts.'" *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015) (quoting *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir.

In any event, "A mistaken career offender designation is not cognizable on collateral review." *United States v. Newbold*, 791 F.3d 455, 459 (4th Cir. 2015); *see also United States v. Foote*, 784 F.3d 931, 932-33 (4th Cir. 2015), *cert. denied*, ___ U.S. ___, 135 S. Ct. 2850 (2015). In contrast, a defendant may challenge on collateral review an erroneous armed career criminal designation. *Newhold*, 791 F.3d at 460. This is because, in that circumstance, the defendant would have "'received a punishment that the law cannot impose on him.'" *Id.* (citation omitted).

On March 6, 2017, the Supreme Court decided *Beckles v. United States*, ___ U.S. ___, 137 S. Ct. 886 (2017). Although not directly on point, it is worth noting that in *Beckles* the Court determined that the advisory sentencing guidelines are not subject to challenge under *Johnson v. United States*, ___ U.S. ___, 135 S. Ct. 225 (2015). The reasoning in *Beckles* is informative as to the career offender guidelines issue here; those guidelines are merely advisory. The *Beckles* Court stated: "[T]he advisory Guidelines do not fix the permissible range of sentences. To the contrary, they merely guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory range." *Beckles*, 137 S. Ct. at 892.

And, as noted, Miles was not sentenced as a career offender. As a career offender, his advisory Guidelines range called for a period of incarceration of 262 to 327 months. But, Miles was sentenced in accordance with the parties' agreement under Rule 11(c)(1)(C), which called for a sentence of 120 months' incarceration. Regardless of Mr. Miles's career offender status, the Court was also required to impose a sentence of at least 120 months.

---

2011), *cert. denied*, 565 U.S. 825 (2011). And, a court may also take judicial notice of its own records. *Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990).

However, the adjudicative facts may "not [be] subject to reasonable dispute," in that they must be "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

The Court imposed the minimum possible sentence required by law. Accordingly, Miles suffered no prejudice from the career offender designation.

### B. Drug Quantity

Miles continues to insist that he was entitled under the Plea Agreement to challenge the drug quantity attributable to him. *See* ¶ 6(c) of the Plea Agreement (ECF 352). This issue was thoroughly addressed by this Court in two sentencing proceedings, as recounted earlier.

As was fully addressed perviously, Miles expressly pleaded guilty to the crime of conspiracy to distribute one kilogram or more of heroin. Both the Plea Agrement and the Rule 11 advisement, as well as the Statement of Facts in support of the guilty plea, expressly represented that the amount of heroin reasonably foreseeable to Mr. Miles was at least one kilogram of heroin. ECF 504 at 32. The Court asked Mr. Miles, under oath, whether the government's summary of facts was accurate, and he responded in the affirmative. *Id.* In response to the Court's inquiry as to whether the defendant in fact committed the crime as summarized by the government, the defendant answered, "Yes." *Id.*[5]

### C. Voluntariness of the Guilty Plea

Miles asserts that his guilty plea was not the product of free will. ECF 584 at 9. The assertion is belied by the record. A review of the Rule 11 proceeding leaves little doubt that this Court conducted a thorough plea colloquy. ECF 404. Ultimately, I determined that Miles entered an informed guilty plea and that his guilty plea was made freely and voluntarily.

Pertinent parts of the Rule 11 colloquy have already been reviewed. In addition, the Court asked Miles whether he was "pleading guilty freely and voluntary" (ECF 504 at 32-33),

---

[5] I also incorporate here the analysis set forth during the sentencing proceedings.

and Miles responded in the affirmative. And, in answer to whether Miles was pleading guilty because he was guilty, as charged, he responded: "Yes, Ma'am." *Id.* at 33; *see also id.* at 26.

On this basis, the Court found the defendant was capable of entering an informed plea, understood the nature of the charges and the consequences of his plea, and that his plea was knowing, intelligent, and voluntary, supported by an independent basis in fact. *Id.*

In support of his claim, Miles complains about conditions at the Chesapeake Detention Facility, where he was held. He suggests that, as a result of the harsh conditions, and his inability to sleep, he was under duress and his will was overborne on September 14, 2014. The Court was satisfied at the time of the guilty plea that Petitioner's will was not overborne. The information alleged here does not persuade me to reach a different view.

### D. Cell-Site Simulator

Petitioner makes the bald assertion that "law enforcement utilized a cell-site simulator, more commonly referred to as a 'Stringray' device to search Petitioner's cellular telephone call content, including metadata . . . ." ECF 584 at 9. The government did not respond to this assertion. He also complains that the government failed to disclose the use of the device during pretrial discovery. The government did not respond to the assertion. However, Mr. Miles provides no factual support for his assertions.

### E. Ineffective Assistance of Counsel

Petitioner complains that his attorney did not advise him that the drug quantity of one kilogram triggered a statutory mandatory minimum sentence of 120 months of incarceration. The government did not respond to the assertion. Nevertheless, it is belied by the record, which makes quite clear the defendant was well aware of the mandated minimum sentence tied to the

14

drug quantity. Indeed, that is the basis on which Miles repeatedly sought to challenge the drug quantity.

Moreover, Miles complains that his attorney failed to file a motion to withdraw his guilty plea. ECF 584 at 11. This assertion is also unsupported by the record. Miles made clear that he did not want to move to withdraw his guilty plea, despite the numerous opportunities afforded by this Court. Petitioner claims he is an unsophisticated litigant. To the contrary, he is an experienced criminal litigant.[6]

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Buck v. Davis*, ____ U.S. ____, 137 S. Ct. 759, 775 (2017). Ineffective assistance of counsel is a well recognized basis for relief under 28 U.S.C. § 2255. *See generally Missouri v. Frye,* 566 U.S. 134 (2012); *Lafler v. Cooper*, 566 U.S. 156 (2012); *Padilla v. Kentucky*, 559 U.S. 356 (2010). To mount a successful challenge under 28 U.S.C. § 2255, based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-prong test set forth in *Strickland v. Washington,* 466 U.S. 668, 687–88 (1984). *See Chaidez v. United States,* 568 U.S. 342, 348 (2013); *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Lafler,* 566 U.S. at 162-63; *Hill v. Lockhart,* 474 U.S. 52 (1985); *United States v. Rangel*, 781 F.3d 736, 742 (4th Cir. 2015); *Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012); *United States v. Higgs*, 663 F.3d 726, 735 (4th Cir. 2011); *see, e.g., United States v. Baker,* 719 F.3d 313, 318 (4th Cir. 2013).

The first prong is known as the "performance prong," which relates to professional competence. The petitioner must show that her attorney's performance fell "below an objective

---

[6] Miles was not a newcomer to the federal criminal justice system. In his prior federal case, over which Judge Bennett presided, Miles filed a motion to set aside his conviction, just as he has done in this case.

standard of reasonableness," measured by "prevailing professional norms." *Strickland,* 466 U.S. at 688; *see United States v. Powell*, 850 F.3d 145, 149 (4th Cir. 2017). The burden is on the petitioner to establish "'that counsel made errors so serious that "counsel" was not functioning as the 'counsel' guaranteed by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 88 (2011) (quoting *Strickland*, 466 U.S. at 687).

As the Supreme Court recently reiterated, the "first prong sets a high bar." *Buck*, 137 S. Ct. at 775; *see also Powell*, 850 F.3d at 149. "The lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Buck*, 137 S.Ct. at 775 (citation omitted). Consequently, the performance prong is "'difficult'" to establish. *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008) (quoting *James v. Harrison,* 389 F.3d 450, 457 (4th Cir. 2004)).

"Keenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Lawrence*, 517 F.3d at 708 (quoting *Strickland,* 446 U.S. at 689); *see Harrington*, 562 U.S. at 104; *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015). Indeed, "the *Strickland* standard must be applied with scrupulous care," *Harrington*, 562 U.S. at 105, and "the standard of judging counsel's representation is a most deferential one." *Id.* The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 88 (quoting Strickland, 466 U.S. at 690).

Second, the petitioner must show that his attorney's deficient performance "prejudiced" her defense. *Strickland*, 466 U.S. at 687. To satisfy the "prejudice prong," a petitioner must

16

show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Id*.

As the *Padilla* Court said, 559 U.S. at 371: "Surmounting *Strickland's* high bar is never an easy task." Accordingly, a petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

A court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id*. at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). Failure to satisfy either prong is fatal to a petitioner's claim. As a result, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

In the case at bar, Miles entered into a Plea Agreement with the government to resolve his case. When a defendant is represented by counsel during the plea process and enters a guilty plea upon the advice of counsel, the voluntariness and intelligence of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771 (1970). As the Supreme Court explained in *Tollett v. Henderson*, 411 U.S. 258, 267 (1973), a defendant who pleads guilty upon the advice of counsel "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*." *Id.* at 267.

Ultimately, the decision to plead guilty rests entirely with the defendant. The Supreme Court has said that "the exercise or waiver of [certain] basic trial rights are of such moment that they cannot be made for the defendant by [his counsel]. A defendant… has 'the ultimate authority' to determine 'whether to *plead guilty*, waive a jury, testify in his or her own behalf, or take an appeal.'" *Florida v. Nixon*, 543 U.S. 175, 187 (2004) (quoting *Jones v. Barnes*, 463 U.S. 745, 751 (1983) (emphasis added)).

In the context of plea agreements, the Supreme Court has slightly modified the *Strickland* test. *See Hill v. Lockhart*, 474 U.S. 52, 57–59 (1985). Although the first prong of *Strickland* remains the same, the second prong requires the petitioner to show that the alleged ineffective assistance affected the outcome of the plea process. *Id.* at 58–59. Relying on *McMann*, *supra*, 397 U.S. at 771, the Supreme Court reiterated in *Hill*, 474 U.S. at 56, that, "where . . . a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness [and intelligence] of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'"

The petitioner must establish that, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. If a petitioner fails to satisfy the prejudice requirement, then a reviewing court need not consider whether the alleged erroneous advice was constitutionally ineffective assistance of counsel. *Id.* at 60 ("We find it unnecessary to determine whether there may be circumstances under which erroneous advice by counsel . . . may be deemed constitutionally ineffective assistance of counsel, because in the present case we conclude that petitioner's allegations are insufficient to satisfy the *Strickland v. Washington* requirement of 'prejudice.'")

*Hooper v. Garraghty*, 845 F.2d 471 (4th Cir. 1988), also provides guidance. In that case, the Fourth Circuit described a petitioner's burden in the context of a post-guilty plea claim of ineffective assistance of counsel. The Court said, *id.* at 475 (quoting *Hill*, 474 U.S. at 59): "When a defendant challenges a conviction entered after a guilty plea, [the] 'prejudice' prong of the [*Strickland*] test is slightly modified. Such a defendant 'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Accord Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1294-99 (4th Cir. 1992).

And, of import here, when a criminal defendant claims ineffective assistance of counsel after pleading guilty, he is "bound," absent clear and convincing evidence to the contrary, "by the representations he made under oath during a plea colloquy." *Fields*, 956 F.2d at 1299; *see Blackledge v. Allison*, 431 U.S. 63, 74-75 (1977).

The Sixth Amendment is of no help to Miles.

### IV. Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant. A COA is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). In other words, unless a COA is issued, a petitioner may not appeal the court's decision in a § 2255 proceeding.[7] 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b).

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Buck v. Davis*, ___ U.S. ___, 137 S. Ct. at 773.

---

[7] The denial of a COA by the district court does not preclude Petitioner from seeking a COA from the appellate court.

Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003).

As indicated, a COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Because Petitioner has not made a substantial showing of the denial of his constitutional rights, I decline to issue a COA.

An Order follows.

Date: September 20, 2018                    /s/
                                            Ellen L. Hollander
                                            United States District Judge