IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>   *Plaintiff*,<br><br>v.<br><br>ANTHONY D. MILES,<br>   *Defendant* | Criminal No. ELH-13-0512 |

**MEMORANDUM OPINION**

Anthony D. Miles, defendant, through appointed counsel, has filed a motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF 717 ("Motion").[1] The Motion is supported by exhibits. The government filed an opposition (ECF 720), along with exhibits. The defendant replied (ECF 726) and submitted additional exhibits. Thereafter, the defense submitted a supplement to its Motion. ECF 737. And, the government responded. ECF 740. In addition, Mr. Miles has filed correspondence. *See* ECF 739, ECF 742.

For the reasons that follow, I shall deny the Motion.

**I.    Background[2]**

On September 24, 2013, the defendant was one of 14 people indicted on drug related charges. *See* ECF 1. Of relevance here, the defendant was charged in Count One with conspiracy to distribute one kilogram or more of heroin during the period from December 20, 2011 through the date of the Indictment. And, in Count Nine, he was charged with distribution of heroin.

---

[1] Defendant's earlier pro se motion (ECF 695) was denied, without prejudice. ECF 699.

[2] The Court incorporates here the factual and procedural information contained in its Memorandum Opinion of September 20, 2018, in which the Court denied the petition for post-conviction relief. *See* ECF 614.

The defendant entered a plea of guilty to Count One on September 30, 2014. *See* ECF 351. Under the Plea Agreement (ECF 352), the parties agreed to a sentence of 120 months of imprisonment as the appropriate disposition, pursuant to Fed. R. Crim. P. 11(c)(1)(C). *Id.* ¶ 9. That sentence corresponded to the congressionally mandated minimum term of imprisonment of ten years. *Id.* ¶ 3. The Plea Agreement also included a Statement of Facts. ECF 352 at 9-13.

Sentencing was initially scheduled for February 13, 2015, and then February 18, 2015. ECF 354; ECF 454. Sentencing was postponed, however, because of the need for an attorney inquiry hearing (ECF 450; ECF 462) and defendant's dispute with the drug quantity to which he had previously agreed. *See* ECF 614 at 3 to 7; *see also* ECF 464.

Sentencing was reset for March 20, 2015. ECF 486. According to the Amended Presentence Report ("PSR," ECF 491), the defendant was then 30 years of age, *id.* at 1, he stood 5 feet 7 inches tall, and he weighed about 300 pounds. *Id.* ¶ 60.[3] The PSR reported that defendant had a history of substance abuse. *Id.* ¶ 66. Moreover, he was the victim of a shooting in 1999. *Id.* ¶ 62.

Further, the defendant qualified as a Career Offender under § 4B1.1 of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"). *Id.* ¶ 24. He had a final offense level of 34 with a criminal history category of VI. *Id.* ¶¶ 26, 42. Defendant's advisory Guidelines called for a period of incarceration ranging from 262 to 327 months. *See* ECF 490 (Statement of Reasons); *see also* ECF 491, ¶¶ 34, 41, 42, 48. However, the Career Offender designation was of no moment, because the Court imposed the agreed upon sentence of 120 months, which corresponded to the mandatory minimum sentence, with credit from October 18, 2013. *See* ECF 489 (Judgment).

---

[3] In the defendant's submission to the Warden, he stated that he is five feet 10 inches in height. ECF 717-1 at 4.

2

The defendant subsequently filed a notice of appeal. ECF 488. But, on August 20, 2015, the Fourth Circuit dismissed the appeal. ECF 534. In the Fourth Circuit's Order (ECF 533), the Court determined that the defendant knowingly and voluntarily waived his right to appeal as part of his Plea Agreement. *See* ECF 352, ¶ 11. Then, as discussed, *infra*, Miles filed for post conviction relief, lodging numerous challenges. *See* ECF 541, ECF 564, ECF 568, ECF 584.

The defendant is incarcerated at FCI Fort Dix, which is currently experiencing a serious outbreak of COVID-19 cases. *See* ECF 737 at 1; 737-1. Moreover, the defendant is morbidly obese, with a body mass index ("BMI") of 49.5. ECF 717; ECF 737. And, he has now served more than seven years of incarceration, or about 70% of his original sentence. ECF 737 at 2. Miles has a projected release date of May 6, 2022. ECF 740 at 1. And, he could be released to a halfway house before that date.

According to the defense, Mr. Miles has proven himself to be a "model inmate." ECF 717 at 9. He has avoided infractions and has an employment prospect if he is released. *Id.* The defendant, who is now 36 years of age, also plans to reside with his long-term girlfriend upon his release. *Id.* at 8.[4]

Additional facts are included, *infra*.

## II.    Standard of Review

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson,* 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395

---

[4] The government indicates that the defendant plans to live with Lisa Randolph, in Catonsville. *See* ECF 740 at 1, ¶ 4. However, the defendant represents that he plans to live with Kanishia Brandon in Baltimore. ECF 717 at 8. The defendant submitted a letter from Ms. Brandon, describing herself as the fiancé of Mr. Miles. ECF 726-1 at 3.

3

(4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. Section 3582 was adopted as part of the Sentencing Reform Act of 1984. It originally permitted a court to alter a sentence only upon a motion by the Director of the BOP. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). Thus, a defendant seeking compassionate release had to rely on the BOP Director for relief. *See, e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866-67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying compassionate release motion because § 3582 "vests absolute discretion" in the BOP).

However, for many years the safety valve of § 3582 languished. BOP rarely filed motions on an inmate's behalf. As a result, compassionate release was exceedingly rare. *See Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In December 2018, Congress significantly amended the compassionate release mechanism when it enacted the First Step Act of 2018 ("FSA"). *See* Pub. L. 115-391, 132 Stat. 5239 (2018). As amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. So, once a defendant has exhausted

his administrative remedies, he may petition a court directly for compassionate release.

Under § 3582(c)(1)(A), the court may modify the defendant's sentence if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds that

> (i) extraordinary and compelling reasons warrant such a reduction;
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), the defendant must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction of his sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with the policy statement issued by the Sentencing Commission in U.S.S.G. § 1B1.13.

As indicated, in resolving a compassionate release motion, a court must consider the factors in 18 U.S.C. § 3553(a). *See Dillon*, 560 U.S. at 826-27; *see also United States v. Trotman*, ___ Fed. App'x ___, 2020 WL 6743609, at *2 (4th Cir. Nov. 17, 2020) (per curiam) (recognizing that, when considering a motion to reduce sentence under 18 U.S.C. § 3582(c)(1)(A), the court must consider the sentencing factors under 18 U.S.C. § 3553(a), to the extent applicable); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020). And, "[w]hen deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. §

5

3582(c)(1)(A)); *see also* 28 U.S.C. § 994(t) (directing Sentencing Commission to "describe what should be extraordinary and compelling reasons for sentence reduction").

U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) Policy Statement." U.S.S.G. § 1B1.13(1)(A) provides for a sentence reduction based on "extraordinary and compelling reasons," and § 1B1.13(1)(B) provides for a reduction based on age, in combination with other requirements. U.S.S.G. § 1B1.13(2) establishes as a relevant factor that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

The Application Notes permit compassionate release based on circumstances involving illness, declining health, age, exceptional family circumstances, as well as "other reasons." Application Note 1 to U.S.S.G. § 1B1.13 defines "Extraordinary and Compelling Reasons" in part as follows (emphasis added):

> 1. **Extraordinary and Compelling Reasons**.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A)  **Medical Condition of the Defendant**.—
>
> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
> (I)  suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,

6

>that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Application Note 1(B) provides that age is an extraordinary and compelling reason where the defendant is at least 65 years of age, has serious physical or mental health issues, and has served at least 10 years in prison or 75% of the sentence. Application Note 1(C) concerns Family Circumstances. Application Note 1(D) is titled "**Other Reasons.**" It permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 App. Note 1(D).

The BOP regulation appears at Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 2582 and 4205. The Court may not rely on the Program Statement, however. Rather, the Court must consider the Sentencing Commission's policy statements. *Taylor*, 820 F. App'x at 230.

The defendant, as the movant, bears the burden of establishing that he is entitled to a sentence reduction under 18 U.S.C. § 3582. *See*, *e.g.*, *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *United States v. Edwards*, NKM-17-00003, 2020 WL 1650406, at *3 (W.D. Va. Apr. 2, 2020). If the defendant can show an extraordinary and compelling reason that renders him eligible for a sentence reduction, the Court must then consider the factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *Dillon*, 560 U.S. at 827. But, compassionate release is a "rare" remedy. *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020); *United States v. Mangarella*, FDW-06-151, 2020 WL 1291835, at *2-3 (W.D. N.C. Mar. 16, 2020); *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019).

7

### III.     COVID-19[5]

Defendant filed his Motion while the nation is "in the grip of a public health crisis more severe than any seen for a hundred years." *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, 461 F. Supp. 3d 214, 223 (D. Md. 2020). That crisis is COVID-19.[6]  The World Health Organization declared COVID-19 a global pandemic on March 11, 2020. *See Seth v. McDonough*, PX-20-1028, 2020 WL 2571168, at *1 (D. Md. May 21, 2020).

The judges of this Court "have written extensively about the pandemic." *United States v. Williams*, PWG-19-134, 2020 WL 3073320, at *1 (D. Md. June 10, 2020) (collecting cases). Therefore, it is not necessary to recount in detail the "unprecedented nature and impact" of the pandemic. *Id.*

That said, the Court must underscore that the virus is highly contagious. *See Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL & PREVENTION (Apr. 2, 2020), https://bit.ly/2XoiDDh.  Moreover, although many people who are stricken with the virus experience only mild or moderate symptoms, the virus can cause severe medical problems as well as death, especially for those in "high-risk categories . . . ." *Antietam Battlefield KOA*, 2020 WL 2556496, at *1 (citation omitted).  As of November 9, 2020, COVID-19 has infected more than 9.9 million Americans and caused over 237,000 deaths in this country.

---

[5] The Court may take judicial notice of matters of public record. *See* Fed. R. Evid. 201.

[6] Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19. *See Naming the Coronavirus Disease and the Virus that Causes It*, WORLD HEALTH ORG., https://bit.ly/2UMC6uW  (last accessed June 15, 2020).

*See COVID-19 Dashboard*, THE JOHNS HOPKINS UNIV., https://bit.ly/2WD4XU9 (last accessed Nov. 9, 2020).

The COVID-19 pandemic is the worst public health crisis that the world has experienced since 1918. *See United States v. Hernandez*, 451 F. Supp. 3d 301, 305 (S.D.N.Y. 2020) ("The COVID-19 pandemic . . . . presents a clear and present danger to free society for reasons that need no elaboration."). The pandemic "has produced unparalleled and exceptional circumstances affecting every aspect of life as we have known it." *Cameron v. Bouchard*, LVP-20-10949, 2020 WL 2569868, at *1 (E.D. Mich. May 21, 2020), *stayed*, 818 Fed. App'x 393 (6th Cir. 2020). Indeed, for a significant period of time, life as we have known it came to a halt. Although many businesses and schools have reopened, many are subject to substantial restrictions. And, in view of the recent resurgence of the virus, businesses and schools are again facing restrictions or closure.

Unfortunately, there is currently no vaccine, cure, or proven treatment that is available, although we are all hopeful that a vaccine is on the horizon. Moreover, according to the Centers for Disease Control and Prevention ("CDC"), certain risk factors increase the chance of severe illness. Those risk factors initially included age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system. *See Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16.

On June 25, 2020 and July 17, 2020, the CDC revised its guidance as to medical conditions that pose a greater risk of severe illness due to COVID-19. Then, on November 2, 2020, to reflect the most recently available data, the CDC again revised its guidance. *See People of Any Age with Underlying Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (Nov. 2, 2020), https://bit.ly/38S4NfY. According to the CDC, the factors that increase the risk include cancer;

9

chronic kidney disease; COPD; being immunocompromised; obesity, where the body mass index ("BMI") is 30 or higher; serious heart conditions, including heart failure and coronary artery disease; sickle cell disease; smoking; pregnancy; and Type 2 diabetes.

The CDC has also created a second category for conditions that "might" present a risk for complications from COVID-19. The factors that might increase the risk include asthma, cerebrovascular disease, hypertension, liver disease, cystic fibrosis, neurologic conditions, a compromised immune system, overweight, pulmonary fibrosis, thalassemia (a type of blood disorder), and Type 1 diabetes. *See id.*

Thus far, the only way to slow the spread of the virus is to practice "social distancing." *See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://bit.ly/3dPA8Ba (last accessed May 21, 2020). Social distancing is particularly difficult in the penal setting, however. *Seth*, 2020 WL 2571168, at *2. Prisoners have little ability to isolate themselves from the threat posed by the coronavirus. *Id.*; *see Cameron*, 2020 WL 2569868, at *1; *see also United States v. Mel*, TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020) ("In light of the shared facilities, the difficulty of social distancing, and challenges relating to maintaining sanitation, the risk of infection and the spread of infection within prisons and detention facilities is particularly high."). Prisoners are not readily able to secure safety products on their own to protect themselves, such as masks and hand sanitizers, nor are they necessarily able to separate themselves from others. Consequently, correctional facilities are especially vulnerable to viral outbreaks and ill-suited to stem their spread. *See Coreas v. Bounds*, TDC-20-0780, 2020 WL 1663133, at *2 (D. Md. Apr. 3, 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *see also* Letter of 3/25/20 to Governor Hogan from approximately 15 members of Johns Hopkins faculty at the Bloomberg

School of Public Health, School of Nursing, and School of Medicine (explaining that the "close quarters of jails and prisons, the inability to employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely"); *accord Brown v. Plata*, 563 U.S. 493, 519-20 (2011) (referencing a medical expert's description of the overcrowded California prison system as "'breeding grounds for disease'") (citation omitted).

The Department of Justice ("DOJ") has recognized the unique risks posed to inmates and employees of the Bureau of Prisons ("BOP") from COVID-19. The DOJ has adopted the position that an inmate who presents with one of the risk factors identified by the CDC should be considered as having an "extraordinary and compelling reason" warranting a sentence reduction. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, on March 26, 2020, instructing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19. *See Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at *8 (E.D. N.C. June 11, 2020). Then, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281. In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement, subject to a finding of an emergency by the Attorney General. *See* Pub. L. No. 116-136, § 12003(b)(2). On April 3, 2020, the Attorney General issued another memorandum to Carvajal, finding "the requisite emergency . . . ." *Hallinan*, 2020 WL 3105094, at *9. Notably, the April 3 memorandum "had the effect of expanding the [BOP's] authority to grant home confinement to any inmate . . . ." *Id.*

11

On March 23, 2020, the CDC issued guidance for the operation of penal institutions to help prevent the spread of the virus. *Seth*, 2020 WL 2571168, at *2. Notably, the BOP has implemented substantial measures to mitigate the risks to prisoners, to protect inmates from COVID-19, and to treat those who are infected. *See* ECF 214 at 5-6 (detailing measures that BOP has implemented at BOP facilities). Indeed, as the Third Circuit recognized in *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020), the BOP has made "extensive and professional efforts to curtail the virus's spread."

As with the country as a whole, however, the virus persists in penal institutions.[7] As of November 18, 2020, the BOP had 125,308 inmates and 36,000 staff. Also, as of that date, the BOP reported that 3,048 inmates and 1,113 BOP staff currently tested positive for COVID-19; 18,160 inmates and 1,677 staff had recovered from the virus; and 141 inmates and two staff member had died from the virus. And, the BOP has completed 75,896 COVID-19 tests. *See* https://www.bop.gov/coronavirus/ (last accessed Nov. 18, 2020). *See COVID-19*, FED. BUREAU OF PRISONS, https://bit.ly/2XeiYH1.

---

[7] The *New York Times* reported in June 2020 that cases of COVID-19 "have soared in recent weeks" at jails and prisons across the country. Timothy Williams et al., *Coronavirus cases Rise Sharply in Prisons Even as They Plateau Nationwide*, N.Y. TIMES (June 18, 2020), https://nyti.ms/37JZgH2. More recently, on October 29, 2020, the *New York Times* reported that, "[i]n American jails and prisons, more than 252,000 people have been infected and at least 1,450 inmates and correctional officers have died" from COVID-19. *See Cases in Jails and Prisons*, N.Y. TIMES (Oct. 29, 2020), https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html?name=styln-coronavisur&region=TOP_BANNER&block=storyline_menu_recirc&action=click&pgtype=LegacyCollection&impression_id=78b44851-1885-11eb-baa7-3f68d7b814c8&variant=1_Show.

And, on November 21, 2020, the *New York Times* wrote in an editorial: "U.S. correctional facilities are experiencing record spikes in coronavirus infections this fall. During the week of Nov. 17, there were 13,657 new coronavirus infections reported across the state and federal prison systems*." America Is Letting the Coronavirus Ravage Through Prisons*, N.Y. TIMES (Nov. 21, 2020), https://www.nytimes.com/2020/11/21/opinion/sunday/coronavirus-prisons-jails.html?referringSource=articleShare.

With respect to Fort Dix FCI, where the defendant is a prisoner, as of November 23, 2020, the BOP reported that 238 inmates and 18 staff currently test positive for COVID-19 and 45 inmates have recovered at the facility. There were no reported deaths. And, the facility has completed 1,209 COVID-19 tests. *See* https://www.bop.gov/coronavirus/ (last accessed Nov. 18, 2020).

### IV.    Discussion

The defendant now weighs about 345 pounds. ECF 717-1 at 4. In the government's submission of November 12, 2020, it recognized that "the defendant suffers from significant medical issues and appears to be in a debilitated medical condition." ECF 740, ¶ 5. Further, the government acknowledged that the defendant "may be eligible for compassionate release," in light of his "medical condition." *Id.* ¶ 6.

To be sure, the coronavirus is not "tantamount to a 'get out of jail free' card." *United States v. Williams*, PWG-13-544, 2020 WL 1434130, at *3 (D. Md. Mar. 24, 2020) (Day, M.J.). However numerous courts have found that, in light of the COVID-19 pandemic, severe obesity, and in particular a BMI above 30, qualifies as a compelling reason for compassionate release. *See, e.g., United States v. Williams*, PWG-19-134, 2020 WL 3073320 (D. Md. June 10, 2020) (finding obese defendant with a BMI of 32.5 qualified for compassionate release in light of COVID-19); *United States v. Staten*, PJM-01-284-4, 2020 WL 4904270, at *2 (D. Md. Aug. 18, 2020) (finding an "extraordinary and compelling reason" for compassionate release based on a BMI of 38); *United States v. Dawson*, No. 18-40085, 2020 WL 1812270, at *7 (D. Kan. Apr. 9, 2020) (granting compassionate release based on a defendant's obesity: "He has a medical condition (obesity) that the CDC recognizes puts him at an increased risk of developing serious illness if he were to become infected with COVID-19."); *United States v. Daniels*, No. 19-00709,

2020 WL 181342, at *2 (N.D. Cal. Apr. 9, 2020) (finding severe obesity constitutes compelling reason for release).

In addition, given the current number of cases at FCI Ft. Dix, it cannot be disputed that the coronavirus has entered and continues to spread around the prison. Accordingly, I am satisfied that the defendant has satisfied the "extraordinary and compelling" prong of the § 3582 analysis. That determination does not end the inquiry, however.

The Court must also consider the sentencing factors under 18 U.S.C. § 3553(a). The factors include: (1) the nature of the offense and the defendant's characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines range; (4) any pertinent Commission policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to victims. As I see it, the sentencing factors under 18 U.S.C. § 3553(a) weigh against release.

Notably, the underlying conduct was extremely serious. This case involved fourteen codefendants and the trafficking of a large quantity of heroin. Moreover, this is the defendant's second federal offense – a fact not fully addressed by the defense. And, the defendant committed this offense on the heels of his release from incarceration with respect to the prior federal case.

As to the prior federal offense, the defendant entered a plea of guilty in May 2005, at the age of 21, for the offense of possession of a firearm in furtherance of a drug trafficking crime. ECF 391, ¶ 33; *see* RDB-04-168. For that offense, Judge Bennett sentenced Miles to 96 months of incarceration. ECF 391, ¶ 33; *see* RDB-04-168, ECF 35 (Judgment entered 7/29/2005). The

defendant was released from incarceration on March 2, 2012. ECF 391, ¶ 33. This offense occurred within about a year of defendant's release. ECF 352 at 9.[8]

In addition, the Court must consider whether, if released, defendant would pose a danger to the community. *See* 18 U.S.C. § 3582(c)(1)(A)(ii). Given that the defendant served a prior sentence that was about as long as what he has served thus far in this case, and that prior sentence did not deter the defendant from engaging in a serious drug offense, the Court has grave concerns as to whether defendant has been rehabilitated.

Moreover, I note that after Miles was sentenced in this case, he submitted numerous filings, complaining about various aspects of his case. *See*, *e.g.*, ECF 559, ECF 575, ECF 580, ECF 588, ECF 599. His filings included a petition under 28 U.S.C. § 2255. *See*, *e.g.*, ECF 541; ECF 564; ECF 568; ECF 584. By Memorandum Opinion and Order of September 20, 2018, I determined that the post-conviction petition lacked merit and denied relief. *See* ECF 614, ECF 615. Miles filed an appeal, which the Fourth Circuit dismissed. ECF 672, ECF 673.

A court may consider a defendant's post-sentencing conduct because it "provides the most up-to-date picture of [his] 'history and characteristics.'" *See Pepper v. United States*, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)); *see also United States v. Scott*, CCB-95-202, 2020 WL 2467425, at *4 (D. Md. May 13, 2020). In this regard, Miles's conduct in challenging so many aspects of the underlying case suggests that he did not accept responsibility for his criminal conduct. For example, the defendant disputed the drug quantity attributable to him, even though he had admitted to it under oath at his guilty plea. He also claimed his plea of guilty was involuntary.

---

[8] Judge Bennett imposed a concurrent sentence of 30 months' imprisonment for defendant's violation of supervised release. *See* RDB-04-158, ECF 98.

And, he complained that his lawyer was constitutionally ineffective, for failing to move for defendant to withdraw his guilty plea. *See* ECF 614 (outlining facts and contentions).

To be clear, the Court would never criticize a defendant's zealous exercise of his constitutional rights or his pursuit of a claim of innocence. Nor do I criticize Miles for his quest for freedom. But, Miles's sworn admission of guilt during a thorough Rule 11 plea colloquy, including as to the drug quantity, and his subsequent attempts to dispute that admission, while casting blame on his lawyer, suggests a failure by him to accept responsibility for his wrongdoing. And, acceptance of responsibility for misconduct is an important step on the road to becoming a law abiding citizen.

## V. Conclusion

For all of the foregoing reasons, the Court shall deny the Motion, without prejudice. This disposition is not intended to dissuade the BOP, in its discretion from releasing Miles on home confinement, pursuant to 18 U.S.C. § 3642(c).

An Order follows.

Date:   November 25, 2020                  /s/
                                           Ellen L. Hollander
                                           United States District Judge